UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

RANDY FARRELL ET AL.                              CIVIL ACTION

VERSUS                                            NO. 25-2197

CITY OF NEW ORLEANS                               SECTION R
DEPARTMENT OF SAFETY &
PERMITS ET AL.

## ORDER & REASONS

Before the Court is the motion to dismiss of defendants Jefferson Parish and Danny Ferrara.[1] Plaintiffs oppose the motion.[2] For the following reasons, the Court grants the motion and dismisses two of plaintiffs' claims against Jefferson Parish and Danny Ferrara with prejudice and one of plaintiffs' claims without prejudice.

## I.    BACKGROUND

Randy Farrell and his company, IECI & Associates LLC ("IECI"), brought this case on October 27, 2025. Farrell alleges that he is the president of IECI, a third-party inspection service provider operating in New Orleans and Jefferson Parish.[3] Plaintiffs' complaint arises from New Orleans' and Jefferson Parish's revocations of their registrations as approved third-party

---

[1]    R. Doc. 9.
[2]    R. Doc. 28.
[3]    R. Doc. 1 at ¶ 1

inspectors, which plaintiffs contend were discriminatory, retaliatory, and done without required due process.[4]

Plaintiffs allege that New Orleans, through Director of Safety and Permits Tammie Jackson, revoked Farrell's inspection registration in January 2023 because Farrell maintained a Louisiana contractor license. The Code of the City of New Orleans allegedly prohibits an individual from maintaining a contractor license and third-party inspector registration simultaneously.[5]   Farrell allegedly continued to operate IECI, which maintained a separate inspection registration.[6]  Farrell allegedly attempted to renew his own inspection registration after allowing his contractor license to lapse.[7]   Plaintiffs allege that Jackson denied Farrell's renewal in September 2023 because of concerns about IECI's city code violations, Farrell's plea on a tax fraud indictment, and an investigation into Farrell in another parish for falsifying documents.[8]

Plaintiffs further allege that in October 2024, Jefferson Parish suspended the inspection registrations of both Farrell and IECI because of federal and state indictments of Farrell on charges of conspiracy to commit

---

[4]     *See id.* at ¶¶ 37, 41, 45, 59.
[5]     *Id.* at ¶¶ 13–14.
[6]     *Id.* at ¶ 17.
[7]     *Id.* at ¶ 16.
[8]     *Id.* at ¶ 18; R. Doc. 1-2 at 4.

wire fraud, wire fraud, conspiracy to commit honest services fraud, honest services fraud, conspiracy to falsify documents, falsifying documents, and forgery.[9]  Plaintiffs allege that defendant Danny Ferrara is the Director of Building Permits for Jefferson Parish.[10]

Plaintiffs allege that in November 2024, Jackson requested detailed information regarding IECI's operations.[11]  Finding Farrell's December 2024 response insufficient, Jackson revoked IECI's inspection registration in New Orleans in February 2025.[12]

Plaintiffs further allege that, at some point, Farrell reported to the mayor of New Orleans a toxic environment at the New Orleans Department of Safety and Permits, leading to the dismissal of two employees from that department and from the New Orleans Office of Inspector General.[13] According to plaintiffs, the revocations of their inspection registrations were, at least in part, retaliation for Farrell's alleged whistleblowing.[14]

Plaintiffs allege that IECI has lost sixteen inspectors and millions of dollars in revenue.[15]

---

9       R. Doc. 1 at ¶ 20; R. Doc. 1-2 at 5–6.
10      R. Doc. 1 at ¶ 6.
11      *Id.* at ¶ 21; R. Doc. 1-2 at 7.
12      R. Doc. 1 at ¶ 25; R. Doc. 1-2 at 8.
13      R. Doc. 1 at ¶¶ 55–56.
14      *Id.* at ¶¶ 55–58.
15      *Id.* at ¶ 24.

Plaintiffs sued New Orleans, Jackson, Jefferson Parish, and Ferrara. As to Jefferson Parish and Ferrara, plaintiffs sued for: (1) violation of the Due Process Clause of the Fourteenth Amendment; (2) violation of the Equal Protection Clause of the Fourteenth Amendment through selective enforcement and discrimination; and (3) violation of the Equal Protection Clause through retaliation.

Jefferson Parish and Ferrara now move to dismiss under Federal Rule of Civil Procedure 12(b)(6), asserting that plaintiffs have failed to state a claim upon which relief may be granted.  The Court considers the motion below.

## II.   LEGAL STANDARD

To survive a Rule 12(b)(6) motion to dismiss, a plaintiff must plead enough facts to "state a claim to relief that is plausible on its face," *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 547 (2007)), and "that, if true, 'raise a right to relief above the speculative level.'" *Franklin v. Regions Bank*, 976 F.3d 443, 447 (5th Cir. 2020) (quoting *Twombly*, 550 U.S. at 555).  A claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678.  The Court must accept all well-pleaded facts as true

4

and must draw all reasonable inferences in favor of the plaintiff. *Lormand v. U.S. Unwired, Inc.*, 565 F.3d 228, 239, 244 (5th Cir. 2009). But the Court is not bound to accept as true legal conclusions couched as factual allegations. *Iqbal*, 556 U.S. at 678. The Court may take judicial notice of publicly available documents that are "matters of public record directly relevant to the issue at hand." *Funk v. Stryker Corp.*, 631 F.3d 777, 783 (5th Cir. 2011).

## III.  DISCUSSION

### A.    Due Process

The Due Process Clause of the Fourteenth Amendment provides that "[n]o State shall . . . deprive any person of life, liberty or property, without due process of law." U.S. Const. amend. XIV, § 1. To determine whether a violation of the Due Process Clause has occurred, the Court must ask, first, "whether there exists a liberty or property interest of which a person has been deprived" and, if so, then "whether the procedures followed by the State were constitutionally sufficient." *Swarthout v. Cooke*, 562 U.S. 216, 219 (2011).

Here, plaintiffs allege that defendants suspended their third-party inspection registrations with Jefferson Parish without providing an opportunity for a hearing or appeal.[16] Plaintiffs allege that these suspensions

---

[16]    R. Doc. 1 at ¶ 40.

deprived them of "constitutionally protected liberty and/or property interests" in their "permit to operate."[17]

### 1. Property Interest

Property interests are created not by the Constitution but by "an independent source such as state law." *Id.* Nevertheless, "federal constitutional law determines whether a state-created interest rises to the level of a legitimate claim of entitlement protected by the Due Process Clause." *Memphis Light, Gas & Water Div. v. Craft* 436 U.S. 1, 9 (1978).

To have a property interest in a government benefit under the Due Process Clause, a plaintiff "must have more than a unilateral expectation of it.  He must, instead, have a legitimate claim of entitlement to it." *Bd. of Regents of State Colleges v. Roth*, 408 U.S. 564, 577 (1972).  When government officials may grant or deny a benefit in their discretion, the benefit is not a protected entitlement. *Town of Castle Rock v. Gonzales*, 545 U.S. 748, 756 (2005).  "To determine whether statutes or regulations create a protected property interest, [the Court] must ask whether they place 'substantive limitations on official discretion.'" *Ridgely v. FEMA*, 512 F.3d 727, 735 (5th Cir. 2008) (quoting *Olim v. Wakinekona*, 461 U.S. 238, 249 (1983)).

---

[17]   *Id.* at ¶ 44.

Plaintiffs have alleged a protected property interest in their registrations with Jefferson Parish as third-party inspectors. Through the Jefferson Parish Code of Ordinances ("the Code") § 8-1-104.7.11,[18] the Parish implemented La. R.S. 40:1730.23, *et seq.*, allowing the Parish to accept building inspections performed by third-party providers.

Defendants mistakenly contend that § 8-1-104.7.11.3 granted Ferrara, Jefferson Parish's Director of Building Permits, broad power unilaterally to revoke a third-party registration.[19] This section states that the Director "may at any time invalidate a third-party provider registration *if said third party violates the procedures herein regulating their interaction with the Parish.*" Code § 8-1-104.7.11.3 (emphasis added). But defendants have not argued that plaintiffs violated any "procedures herein," nor do the facts alleged by plaintiffs indicate any such violations. Instead, defendants allegedly revoked plaintiffs' registrations in response to plaintiff Farrell's criminal indictments.[20]

---

[18]    Jefferson Parish repealed § 8-104.7.11 with the passage of Ord. No. 26924 in January 2025, several months after the suspension of plaintiffs' registration. Because the events at issue in this case occurred before its repeal, § 8-104.7.11 governs this case.

[19]    R. Doc. 9-1 at 12.

[20]    R. Doc. 1 at ¶ 20.

Nevertheless, the Code did not create a constitutionally protected property interest in third-party registrations.  A protected property interest exists only when the law explicitly constrains official discretion by providing mandatory procedures governing the revocation of a benefit.  It does not exist when the law is silent, neither mandating such procedures, nor explicitly granting official discretion.  *See Ridgely*, 512 F.3d at 735–36 (requiring a Court to look for "explicitly mandatory language, *i.e.*, specific directives to the decisionmaker that if the regulations' substantive predicates are present, a particular outcome must follow" (quoting *Ky. Dep't of Corrections v. Thompson*, 490 U.S. 454, 462–63 (1989))).  The Code was silent on the process governing suspension of third-party registrations outside the limited circumstances of § 8-1-104.7.11.3.  It certainly did not, as plaintiffs allege, require a written notice and a "time frame for compliance."[21] Because it did not create mandatory procedures governing suspension of registrations, the Code did not create a protected property interest in such registrations.

Plaintiffs' arguments to the contrary are meritless.  Plaintiffs first argue that "[t]he Code does not vest unbridled discretion in the Parish to revoke or

---

[21]    *Id.* at ¶ 39.

8

suspend a license at will without cause."[22]  But that is not the applicable test. Defendants need not show that the Code grants officials "unbridled discretion."  Rather, plaintiffs must show that the Code "place[s] substantive limitations on discretion" in order to create a property interest.  *Ridgely*, 512 F.3d at 725.  The Code does not do so.

Second, plaintiffs claim that any inspector who meets the Code's criteria for third-party registration eligibility "has a legitimate claim of entitlement to continued registration and licensure."[23]   But the Code nowhere *required* the Parish to issue registrations to eligible third-party inspection services.  To the contrary, the Code stated that "[t]hird party inspection services . . . *may* perform construction inspections which *may* be accepted by the Parish of Jefferson."  Code § 8-1-104.7.11 (emphasis added). Absent a mandate, plaintiffs had only a "unilateral expectation" of their registrations, not a "legitimate claim of entitlement" to them.  *Roth*, 408 U.S. at 577 (1972).

Third, plaintiffs appeal to La. R.S. § 37:2158 to demonstrate that, under Louisiana law, "contractor licenses and registrations are property interests of the highest order."[24]  As plaintiffs contend, La. R.S. § 37:2158

---

[22]    R. Doc. 28 at 5.
[23]    *Id.* at 5.
[24]    *Id.* at 6.

does provide a statutory framework for the revocation of contractor licenses, though contrary to plaintiffs' claim, it does not require either "written notice" or "formal administrative hearings."[25]   Crucially, this statute governs revocation of State-issued contractor licenses; it has nothing to do with parish-level third-party inspection registrations.  Plaintiffs cite no law for their proposition that, because "such protections apply to state-issued contractors' licenses, they apply with equal force . . . to Parish-issued licenses and registrations."[26]  The State has chosen to provide procedural protections for contractor licenses, but neither the State nor Jefferson Parish has chosen to do the same for third-party inspection registrations.  Plaintiffs therefore do not have a protected property interest in their registrations.

Finally, plaintiffs' contention that the Fifth Circuit recognizes government-issued permits as potentially protected property interests— though true, *see, e.g., Bowlby v. City of Aberdeen*, 681 F.3d 215, 220 (5th Cir. 2012)—is inapposite.[27] Plaintiffs possessed registrations, not licenses or permits.  This case therefore bears less resemblance to cases about licenses

---

[25]    *Contra id.*

[26]    *Id.*

[27]    Plaintiffs variously refer to the interest at issue in this case as a "license," "permit," or "registration." *See, e.g., id.* at 5.  It is a registration.  Code § 8-1-104.7.11.

and permits than it does to cases about local governments' accepting the services of private businesses.

Two cases are illustrative. In *Blackburn v. City of Marshall*, 42 F.3d 925 (5th Cir. 1995), the operator of a towing and wrecker service alleged a violation of his due process rights when his company was removed from the county's rotating on-call list for the removal of cars involved in accidents. The Fifth Circuit held that the plaintiff failed to allege a protected property interest in remaining on the list because no law or regulatory scheme governed membership of the list. The plaintiff was "essentially claiming a right to receive a certain class of business referrals from the local government," but "the mere existence of a governmental program or authority empowered to grant a particular type of benefit . . . does not give the plaintiff a property right, protected by the due process clause, to receive the benefit." *Blackburn*, 42 F.3d at 941. Here, plaintiffs assert a right to a registration that would enable them to perform inspections accepted by Jefferson Parish. But the mere existence of the Parish's third-party inspection program does not entitle plaintiffs to participation in that program, and as discussed above, no law mandated their inclusion in the program.

11

Similarly, in *Baldwin v. Davis*, 250 F.3d 943 (5th Cir. 2001), the plaintiff was a soliciting bond agent licensed to write bonds by the State of Mississippi. She sued the county sheriff when he removed her from the list of bondsmen approved to write bonds at the county jail, asserting a protected property interest in the right to have her bonds accepted at the jail. The Fifth Circuit held that no property interest exists in the "ability to write bonds within a limited political subdivision such as a city" and in the "ability to have bonds written by [plaintiff] accepted by authorities in that political subdivision" because "Mississippi law expressly leaves the approval of tendered bonds to the discretion of the responsible officer." *Baldwin*, 250 F.3d at 946. Here, as in *Baldwin*, the mere existence of a parish-level program does not entitle plaintiffs to participate in that program. Louisiana law and Jefferson Parish's ordinances leave to the Parish discretion regarding the administration of its third-party inspection program. Plaintiffs therefore have no property interest in the ability to have their inspection services accepted by Jefferson Parish.

### 2. *Liberty Interest*

Plaintiffs nominally assert a liberty interest,[28] and defendants nominally deny the existence of such an interest,[29] but neither party distinguishes liberty interests from property interests in its briefs. Nevertheless, the Court considers whether plaintiffs have plausibly alleged the deprivation of a liberty interest, as distinct from a property interest. *See Cowan v. Corley*, 814 F.2d 223, 227 (5th Cir. 1987) (analyzing plaintiff's claim as a deprivation of liberty where the pleadings, despite making factual allegations suggesting a liberty interest claim, claimed only a property interest violation).

"A liberty interest may arise from the Constitution itself, by reason of guarantees implicit in the word 'liberty.'" *Wilkinson v. Austin*, 545 U.S. 209, 221 (2005). Liberty interests that courts have recognized include the interest in pursuing a chosen occupation, s*ee, e.g., Stidham v. Tex. Comm'n on Priv. Sec.*, 418 F.3d 486, 491 (5th Cir. 2005), and the interest in operating a legitimate business, *see Texas v. Thompson*, 70 F.3d 390, 392 (5th Cir. 1995).

Plaintiffs have alleged a deprivation of a liberty interest and alleged facts suggesting that the liberty interest in question—though never named by

---

28    R. Doc. 1 at ¶¶ 7, 44.
29    R. Doc. 9-1 at 2.

plaintiffs—is the interest in pursuing their chosen occupation of performing building inspections. Plaintiffs have alleged that defendants' actions resulted in IECI's loss of sixteen inspectors and millions of dollars in revenue.[30]

Plaintiffs have not alleged facts sufficient to state a claim for deprivation of the liberty interest in pursuing an occupation. The bar for such a claim is a high one. A plaintiff "must plead facts showing that Defendants 'effectively foreclosed' him from practicing his chosen profession." *Ghedi v. Mayorkas*, 16 F.4th 456, 467 (5th Cir. 2021). Even when the government makes a plaintiff's "efforts to remain in a given vocation more difficult or even 'nearly impossible,'" the plaintiff's "liberty interest remains intact." *Adams v. City of Harahan*, 95 F.4th 908, 916 (5th Cir. 2004). "A plaintiff's liberty interest in pursuing a specific profession is only violated if he has been completely prevented from working in that field." *Id.*

Here, plaintiffs have pled facts showing that their business was damaged (though they have not explained what actions by which defendants, exactly, caused this damage).[31] But Plaintiffs have not pled facts showing

---

[30]   R. Doc. 1 at ¶ 24.
[31]   *Id.*

14

that they have been "completely prevented" from carrying on the building-inspection profession.  In fact, plaintiffs allege that IECI is "a third-party inspection service provider operating in various municipalities, *including* the City of New Orleans and Jefferson Parish,"[32] suggesting that despite the revocation of plaintiffs' registrations in those two municipalities, plaintiffs continue to provide inspection services elsewhere.  Plaintiffs have therefore failed to state a due process claim for violation of a protected liberty interest.

### 3. *Process Provided*

Even if plaintiffs had alleged a protected property or liberty interest, their due process claim would still fail because they were provided adequate process.  When a person's protected property or liberty interest is at stake, that person must be afforded notice and an opportunity to be heard. *Dusenbery v. U.S.*, 534 U.S. 161, 167 (2002).  While the government ordinarily must provide these procedures before depriving a person of a protected interest, *Cleveland Bd. of Educ. v. Loudermill*, 470 U.S. 532, 542 (1985), exigent circumstances can justify providing only post-deprivation process, including when the person facing deprivation has been formally charged with a crime.  *Gilbert v. Homar*, 520 U.S. 924, 934 (1997).  To determine what process is constitutionally due, the Court balances three

---

[32]     *Id.* at ¶ 1.

factors: "[f]irst, the private interest that will be affected by the official action; second, the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards; and finally, the Government's interest." *Mathews v. Eldridge*, 424 U.S. 319, 335, (1976).

Here, even if plaintiffs had a protected interest in their third-party registrations, that interest was outweighed by Jefferson Parish's "significant interest in immediately suspending, when felony charges are filed against them," third-party inspection providers tasked with certifying the safety of the buildings they inspect. *See Gilbert*, 520 U.S. at 932. This is especially true because the crimes for which plaintiff Farrell has been charged—including honest services fraud, making false statements on inspection records, and forgery[33]—bear directly on the trustworthiness of the inspections plaintiffs performed and, by extension, the safety of the buildings inspected. Under these circumstances, plaintiffs were not entitled to pre-deprivation process.

Finally, plaintiffs were afforded adequate post-deprivation process. When deprivation occurs without process under exigent circumstances, the government must provide a "prompt postsuspension" opportunity to be

---

[33]     R. Doc. 1-2 at 5–6.

heard. *Id.* at 932. The Jefferson Parish Code of Ordinances provides just such an opportunity: "[a]ppeals to the Board may be taken by any party aggrieved . . . by a decision of the Code Official," within 30 days of such a decision. Code § 8-1-105.7.1. Plaintiffs do not allege that they availed themselves of this opportunity to be heard. They instead protest that the defendants did not inform them of this opportunity.[34] But the opportunity to appeal is contained in Jefferson Parish's publicly available Code; if not actually aware of this opportunity, plaintiffs were at least constructively aware. No more was required of defendants. *See generally City of West Covina v. Perkins*, 525 U.S. 234 (1999) (holding that when procedural remedies are enshrined in published laws, the government need not specifically notify plaintiffs of the existence of these remedies). Defendants provided all process that was due, and plaintiffs' failure to take advantage of that process defeats their claim of a due process violation.

Plaintiffs have not pled facts plausibly showing a violation of either a property interest or a liberty interest, and alternatively, they have not pled facts plausibly showing that the process they were afforded was constitutionally inadequate. They have therefore failed to state a claim under the Due Process Clause. The Court dismisses plaintiffs' due process claims

---

[34] R. Doc. 28 at 9.

17

against Jefferson Parish and Ferrara for failure to state a claim upon which relief can be granted.

## B.   Equal Protection

The Equal Protection Clause of the Fourteenth Amendment provides that "[n]o State shall . . . deny to any person within its jurisdiction the equal protection of the laws."  U.S. Const. amend. XIV, § 1.  Plaintiffs' third cause of action is styled as a claim arising from selective enforcement and discrimination in violation of the Equal Protection Clause.

Plaintiffs fail to allege selective enforcement by Jefferson Parish and Farrell.  In their third cause of action, plaintiffs allege facts purporting to show selective enforcement and discrimination by only New Orleans, not Jefferson Parish.[35]  Elsewhere in their complaint, plaintiffs allege that Jefferson Parish suspended their registrations, but they do not allege facts suggesting that this suspension was an equal protection violation.  It could not have been selective enforcement because it was not an enforcement action: Jefferson Parish's suspension of plaintiffs' registrations was a discretionary decision, not an enforcement of an ordinance authorizing such suspension.  Moreover, plaintiffs have not alleged facts suggesting that Jefferson Parish's action was "motivated by improper considerations, such

---

[35]   R. Doc. 1 at ¶¶ 43–44.

18

as race, religion, or the desire to prevent the exercise of a constitutional right," as is required for a selective enforcement claim. *Bryan v. City of Madison*, 213 F.3d 267, 277 (5th Cir. 2000). Plaintiffs have therefore failed to state a selective enforcement claim.

Plaintiffs have similarly failed to allege discrimination against Jefferson Parish. The only discrimination theory that could apply to plaintiffs is a class-of-one claim, in which they must show (1) that they were intentionally treated differently from others similarly situated and (2) that there was no rational basis for this difference. *Stratta v. Roe*, 961 F.3d 340, 360 (5th Cir. 2020); *Mikeska v. City of Galveston*, 451 F.3d 376, 381 (5th Cir. 2006). Plaintiffs have alleged differential treatment of inspectors with criminal convictions by New Orleans, but they have not made any such allegations against Jefferson Parish. Plaintiffs have therefore failed to state a discrimination claim.

## C. Retaliation

In their complaint, plaintiffs characterize their fourth cause of action as an additional claim under the Equal Protection Clause,[36] but they recharacterize it as a First Amendment retaliation claim in their

---

[36]    R. Doc. 1 at ¶¶ 54–67.

Memorandum in Opposition to the Motion to Dismiss.[37]    This recharacterization is appropriate.  *See Thompson v. City of Starkville*, 901 F.2d 456, 468 (holding that a pure retaliation claim sounds in the First Amendment, not the Equal Protection Clause); *see also U.S. ex rel. Bias v. Tangipahoa Par. Sch. Bd.*, 816 F.3d 315, 321 (5th Cir. 2016) ("Dismissal is improper if the allegations support relief on any possible theory." (citation modified)).

The government "may not deny a benefit to a person on a basis that infringes his constitutionally protected interests—especially, his interest in freedom of speech."  *Blackburn*, 42 F.3d at 931 (quoting *Perry v. Sindermann*, 408 U.S. 593, 597 (1972)).  To state a claim for First Amendment retaliation, plaintiffs must show that:

> (1) they were engaged in constitutionally protected activity, (2) the defendants' actions caused them to suffer an injury that would chill a person of ordinary firmness from continuing to engage in that activity, and (3) the defendants' adverse actions were substantially motivated against the plaintiffs' exercise of constitutionally protected conduct.

*Keenan v. Tejeda*, 290 F.3d 252, 258 (5th Cir. 2002).

---

[37]    R. Doc. 28 at 13–14.

Plaintiff Farrell claims that he is the victim of a coordinated campaign of retaliation by New Orleans and Jefferson Parish for reporting a toxic environment at the City of New Orleans Department of Safety and Permits.[38]

Assuming—without deciding—that plaintiffs satisfy the first two prongs of the *Keenan* test, they have nevertheless failed to allege facts plausibly showing that defendants Ferrara and Jefferson Parish suspended their third-party registration in retaliation for Farrell's exercise of his First Amendment rights in New Orleans.  Plaintiffs nowhere allege who Detective Todd Riviera is or for whom he works; why he would be concerned about events at the City of New Orleans Department of Safety and Permits or Office of Inspector General; whether he or anyone else communicated with Jefferson Parish or Ferrara; why Jefferson Parish or Ferrara would suspend an inspection registration in retaliation for events occurring in a different parish; or when those events occurred.  In addition, the statement that Farrell "believes the City of New Orleans and Jefferson Parish, along with others, are working to deprive him of his rights and force him out of business" is conclusory, lacking any supporting factual allegations.[39]

---

[38]    R. Doc. 1 at ¶¶ 55–58.

[39]    *Id.* at ¶ 57.

Moreover, facts pled and documents attached to the complaint show a motivation other than unconstitutional retaliation for defendants' suspension of plaintiffs' registrations: that Farrell had been charged for various crimes related to his inspection services in both federal and state court.[40]  Plaintiffs have not pled facts plausibly showing any other motivation by Jefferson Parish or Ferrara.  Plaintiffs have therefore failed to state a claim for First Amendment retaliation, and their fourth cause of action must be dismissed as to defendants Jefferson Parish and Ferrara.

## IV.  LEAVE TO AMEND

Denying leave to amend "is not an abuse of discretion if allowing an amendment would be futile."  *Marucci Sports, L.L.C. v. Nat'l Collegiate Athletic Ass'n*, 751 F.3d 368, 378 (5th Cir. 2014); *see also Brewster v. Dretke*, 587 F.3d 764, 768 (5th Cir. 2009) ("Granting leave to amend is not required . . . if the plaintiff has already pleaded his best case.") (citation modified).

Because plaintiffs cannot plead facts that would overcome both the lack of a liberty and property interest and the adequacy of the process they received and have pled no conduct whatsoever by the defendants to support an equal protection claim, amendment of these claims would be futile.  The

---

[40]     *Id.* at ¶20; R. Doc. 1-2 at 5–6.

Court therefore dismisses them with prejudice. The Court dismisses without prejudice plaintiffs' First Amendment claims.

## V.    CONCLUSION

For the foregoing reasons, the Court grants defendants' motion and DISMISSES WITH PREJUDICE plaintiffs' second cause of action and third cause of action against defendants Jefferson Parish and Ferrara and DISMISSES WITHOUT prejudice plaintiffs' fourth cause of action against defendants Jefferson Parish and Ferrara.

New Orleans, Louisiana, this __14th__ day of July, 2026.

_____
SARAH S. VANCE
UNITED STATES DISTRICT JUDGE